UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

UNITED STATES OF AMERICA,

        -against-

                                                                             12 CR 74 (AJN)

FRANK CHAMBERS

                Defendant.
------------------------------------------------------------- X

### DEFENDANT FRANK CHAMBERS' SENTENCING SUBMISSION

                                        Federal Defenders of New York
                                        Attorney for Defendant
                                        **FRANK CHAMBERS**
                                        52 Duane Street - 10th Floor
                                        New York, New York  10007
                                        Tel.: (212) 417-8750

                                        **Julia L. Gatto**

                                        <u>Of Counsel</u>

TO:    PREET BHARARA, ESQ.
         United States Attorney
         Southern District Of New York
         One St. Andrew's Plaza
         New York, New York  10007
         **Attn:  Steve Lee, Esq.**
                Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

*Appeals Bureau*
Barry D. Leiwant
*Attorney-in-Charge*

October 22, 2012

**VIA HAND DELIVERY AND ECF**

The Honorable Alison J. Nathan
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **United States v. Frank Chambers**
                  12CR74

Your Honor:

    We write in advance of Mr. Chambers' sentencing, scheduled for November 2, 2012, to provide additional background information about the defendant, including the attached letters of support from Mr. Chambers' family and friends. On August 9, 2012, Mr. Chambers pleaded guilty pursuant to a plea agreement to Count Two of Indictment 12 CR 74 in which he was charged with theft of federal funds. The parties and Probation Department calculate a total offense level of 6 under the advisory sentencing guidelines. Because Mr. Chambers has no prior convictions, he falls into a Criminal History Category I. The advisory guidelines, therefore, yield an advisory range between 0 and 6 months' imprisonment in Zone A of the sentencing table. For all of the following reasons, we ask that the Court impose a sentence within the stipulated guidelines' range and impose no longer than a one year period of probation.

    Mr. Chambers is a 67 year old husband and father of four with no criminal history. He was working as a senior lunch helper at P.S. 158 (a job he held for close to 15 years) when he committed the offense. He was brought into the offense by a far more culpable individual, Trifon Radef, who exploited Mr. Chambers' financial difficulties to his own advantage. Even before sentencing, Mr. Chambers already has paid mightily for his involvement in Radef's scheme. He has lost the job he held for a decade and a half, has no chance of ever working in the Board of Education again in which he truly hoped to progress his career and through which he and his family had health insurance, he has been sued civilly by the City, and he narrowly escaped losing his house in foreclosure.

    Mr. Chambers sincerely regrets his involvement in Radef's offense. But for his conduct here, he has been a law-abiding, upstanding, productive citizen. He was raised in poverty in

The Honorable Alison J. Nathan
October 22, 2012
Page 2 of 5

> **United States v. Frank Chambers,**
> **12 CR 74**

Jamaica and came to this country as a lawful permanent resident thirty years ago to work hard and build and support his family. He has been continuously employed since he was 19 years old. He held his first job for twelve years; his second for fifteen, and his third, at P.S. 158, for almost a decade and a half. Today, he is a property owner of a modest home in Queens (although without a job it fell into foreclosure) in which he lives with his wife of sixteen years, Sharon Chambers, and their children, Jay, 24 years old; Sharette, 21; Kenji, 20; and Magnus, 17.

### I. Factual Background

A. <u>Family and Youth</u>

Frank Chambers was born in 1945 in Kingston, Jamaica, the fifth of his parents' eight children. Mr. Chambers was very close with his brothers and sisters growing up; the oldest and youngest were only 14 years apart in age. The Chambers family was happy but poor. Their father, James Chambers, struggled to support his family on his meager fireman's salary. Mr. Chambers' maternal grandmother, Louisa Brown, would send food from her farm to the family every week so that they would not go hungry.

When Mr. Chambers was a boy in Jamaica, elementary schools were public but secondary education was not. Although his siblings attended high school, by the time Mr. Chambers was old enough to go, his parents had run out of money. An aunt took over paying for Mr. Chambers' youngest sister's education but Mr. Chambers was not as lucky. Since his parents could no longer afford the tuition, Mr. Chambers was forced to leave high school after only 6 months in the eighth grade.

In Kingston's tough labor market, Mr. Chambers got his first long term job when he was 19 years old at a customs brokerage house at the port. He worked at the firm until he was 31 when it went out of business. The job market was very difficult when Mr. Chambers reentered it and he found himself working odd jobs in painting and construction for the next three years.

B. <u>Immigration</u>

Mr. Chambers' mother, Ethel Chambers, emigrated from Jamaica to Canada in 1966 when Mr. Chambers was 21 years old. Mr. Chambers' younger brother Neville went with her. By 1979, when Mr. Chambers was 34, his mother and brother were living in New York City. Neville sponsored Mr. Chambers' application for admission and Mr. Chambers came to the United States as a lawful permanent resident that year.

Mr. Chambers moved in with his brother, Neville, who was enlisted in the United States Army and stationed at Fort Hamilton in Brooklyn. Within five days of his arrival in this country,

The Honorable Alison J. Nathan
October 22, 2012
Page 3 of 5

      **United States v. Frank Chambers,**
      **12 CR 74**

Mr. Chambers obtained employment with Securities Messenger Service as a courier for Dean Witter. He held the job for the next 15 years.

C. Family and Children

      Around 1990, Mr. Chambers began a relationship with his future wife, Sharon. At the start of their courtship, Sharon was a single mother to a one year son from a previous marriage, Jay. Mr. Chambers has raised Jay as his own son. Although Jay maintained a relationship with his biological father, Jay calls Mr. Chambers "dad" and Mr. Chambers calls him his son. Mr. Chambers and Sharon married in 1995 and have three other children: Sharette, Kenji, and Magnus, all of whom live with them.

      Today, Jay is a therapist who provides behavioral development services to children with mental disabilities. Sharette is a hairdresser. Kenji attends Sanford-Brown and is studying nursing. The youngest, Magnus, an aspiring chef, is still in high school.

D. Department of Education Employment

      When Sharon and Mr. Chambers began their family, Mr. Chambers still was employed as a courier. Sharon ran a daycare from the family's home. Mr. and Mrs. Chambers had a reputation for being loving and effective parents and their children were known as well-behaved, especially within their church community. The daycare attracted loyal clients and Sharon earned around $500 per week. However, Mr. Chambers earned only about $230 per week and, with four kids to raise, money was tight in the Chambers' household.

      Mr. Chambers decided to leave the courier service at which he had worked for 15 years in 1995. He began substituting as a lunch service worker at various schools for the Department of Education (the "DOE") in the fall of 1995 and was happy to secure a full time position the following January. Even though he did not make much more money working for the DOE than he did for Dean Witter, Mr. Chambers finally had health coverage for his young family.

      The school kitchen had large walk-in freezers which caused severe pain for Mr. Chambers who had had metal implants inserted in his left arm in a series of surgeries in 1985 after he was hit by a van. Accordingly, not long after starting his job, Mr. Chambers began to look for other opportunities within the DOE. Mr. Chambers decided he wanted to become a DOE custodian and he approached the school's custodian, Trifon Radef. Radef offered Mr. Chambers extra custodial work to supplement his lunch service position. Mr. Chambers was thrilled to have the extra work which was mainly on the weekends or during school vacations and to have made the connection with Radef. Mr. Chambers hoped that one day Radef would promote Mr. Chambers from the cafeteria to a full time custodian position.

The Honorable Alison J. Nathan
October 22, 2012
Page 4 of 5

**United States v. Frank Chambers,
12 CR 74**

Between his lunch service position and the extra work he took on, Mr. Chambers worked grueling hours and sacrificed by seeing less of his family—often they would be in bed when he came home after an evening shift and still asleep when he left the next day. But, Mr. Chambers was putting in the long hours for his family's sake.

E. Offense Conduct

All Mr. Chambers wanted was to earn a full time custodian position. Radef was the man who could have promoted Mr. Chambers. Mr. Chambers also came to rely on the extra money he earned from the custodial work Radef gave to him. Because of these two reasons, Mr. Chambers followed Radef almost blindly in whatever he asked him to do.

During the summer of 2005, at the direction of Radef, Mr. Chambers began doing part-time custodial work at Roosevelt High School while school was out. Thereafter, he worked weekends and vacation weeks at Roosevelt. Shortly after starting the work at Roosevelt High School, Radef began paying Mr. Chambers in cash and asking Mr. Chambers to endorse over to Radef the "paychecks" Mr. Chambers earned for the supplemental custodial work. Radef also had Mr. Chambers sign blank time sheets. While at first, Mr. Chambers thought Radef was paying him cash for the custodial work Mr. Chambers actually completed, with time it was clear that Radef was overcharging the D.O.E. and converting the money to his own use. Mr. Chambers did not want to question Radef because he was the man who could ultimately promote Mr. Chambers out of his cafeteria job to a full time custodial position. As Mr. Chambers explained at his plea allocution, he feels very badly for having been involved in and helping with Radef's scheme.

F. Post-Offense Conduct

The single worst collateral consequence for Mr. Chambers for his involvement in Radef's offense has been the loss of his D.O.E. job which he held for 15 years and on which his family relied financially. The year after his termination from his job was very difficult. However, in a testament to the strength of his family and his own personal ability to persevere, Mr. Chambers has managed to survive. Although the bank tried to foreclose on their house, the Chambers recently negotiated a payment schedule and appear to be out of foreclosure proceedings. Similarly, despite obvious difficulties for a man of Mr. Chambers' age with a felony conviction in today's job market to find employment, Mr. Chambers is moving positively forward with his job search. A talented home cook with a passion for food, Mr. Chambers researched jobs in the food service industry and earned his food preparation certificate from the city this past summer. He is hard at work looking for a job and remains hopeful.

The Honorable Alison J. Nathan
October 22, 2012
Page 5 of 5

      **United States v. Frank Chambers,**
      **12 CR 74**

### II. The Court Should Impose a Short Probationary Sentence

In light of the stipulated guidelines range and Mr. Chambers' history and characteristics and the nature and circumstances of his offense, we ask that the Court sentence Mr. Chambers within the stipulated guidelines range to a short term of probation. The instant offense is Mr. Chambers' first (and surely last) conviction. Indeed, he is a 67 year old man who, absent the instant offense and in every other aspect of his life, has exhibited himself to be an ideal member of society. He is a loving husband, a devoted father, and a generous community member. The prosecution by itself and the conviction's collateral consequences already have amply satisfied § 3553(a)'s goals and objectives. A sentence beyond that requested herein would be "greater than necessary." For all of the foregoing reasons, we respectfully ask that the Court give a lenient sentence to Mr. Chambers.

                                                            Very truly yours,

                                                            Julia L. Gatto
                                                            Assistant Federal Defender
                                                            (212) 417-8750

cc:     Steve Lee, Esq. (via ECF and hand delivery)

# EXHIBIT A.

2263 Hathaway Avenue
Elmont, NY 11003


September 25, 2012


Honorable Alison J. Nathan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007


Dear Judge Nathan:

My name is Hyacinth Harrison and I am writing on behalf of my brother, Frank Chambers. I am a retiree and work as a Real Estate Sales Associate. I am a Methodist and am very involved in my church. During the winter months I participate in the feeding of the Homeless at my church. I am involved in Bible studies among other things. I am quite involved in my community by participating in our civic association and the voter registration process. I am an avid golfer and love to read.

Frank is a very spiritual person and because his wife and children are involved in the Jehovah Witness religion and he was raised in the Methodist religion, he chooses to join me in worship when he can. His strong points are to help others and spend time with his family. A young man had been ill on his block with cancer and three times a week he would be sure to make a pot of soup and he took it over and fed the young man, who passed recently. When the snow falls if he can't be present, he sends his sons to help to clean some of his neighbors' walkway.

Frank worked two jobs in order to prepare for his family. He made sure they had what was needed. He was always concerned about paying his bills on time and it is important that his children grow up in a house and not an apartment. He wanted them to grow as he did, and have the freedom of playing in a backyard

and not on the street. He is a strong father and his children have the utmost respect for him. He takes an interest in the children in his community and is always watching out for them.

Frank has strong moral principles and he instills them in his children. His mantra is "to thank God every day for the little he has because there are so many people who are less fortunate than he is". He is the most generous person I know. I sometimes collect donations for programs at my church, and he is always the first to make that donation, and if he did not have he would make sure his friends donate something to the cause. I see Frank at least twice per week and if I can't see him he makes sure he calls me to see if I am doing OK.

We are from a large family but because he is the one living closest to me makes us bond very easily. Frank is the one who most of his siblings call for advice. He is very comical and can make you laugh in seconds. Our conversations are always based on family, faith, politics and sports. He is very keen on the game of cricket, which I must admit, I am not very versed on, so he makes sure I know enough about cricket and because I am a golfer that becomes a very important part of our conversations..

Frank is a superb cook and his dream was always to have his own restaurant. This has not materialized but he thinks there is always hope. He cooks for his family and even comes to my home and cooks for me. He cooks for some of his friends in his neighborhood and sometimes when I visit him, I see them coming with containers " because Frank is cooking." I could not show my annoyance because he would show me how important it is to give back. I was impressed when he recently went out and got his Food Service Certificate because that showed me how committed he is to making his family happy. I told him I would always be looking out for him and his family and I am very sincere about that. I know that we all make mistakes at some time, but it is all about what we learn from our mistakes and how to move forward.

Frank shows so much love for his fellowman. His father died about ten years ago in Jamaica and Frank was the first one to book his ticket and fly to Jamaica to bury

2

him. Our Mom died here in New York approximately four years ago and he has not stopped grieving. He insists that we go to her grave often and pray.

I must thank you for giving me the opportunity to write this letter on behalf of my brother.

Very truly yours,

*Hyacinth Harrison*
Hyacinth Harrison

3

**EXHIBIT B.**

SONIA L. CLARKE
130-24 236 Street
Rosedale, NY 11422

September 30, 2012

Hon. Alison J. Nathan
United States District Judge
Southern District of NY
United States Courthouse
500 Pearl Street
New York, NY 10007

Dear Hon. Nathan:

My name is Sonia Clarke. I am a paralegal. I met Frankie Chambers approximately 19 years ago through a mutual friend.

Frankie is one of the most honorable persons I know. I was there when he purchased his house. I saw him working two jobs to maintain his home. At no time did he ask anyone for help in any way. He's always a proud individual who believes in himself.

Frankie is a person of the utmost integrity. I truly hope that you can find it in your heart to help him.

Thank you in advance for your kind consideration on Frankie's behalf, I remain,

Sincerely yours,

Sonia L. Clarke

**EXHIBIT C.**

Case 1:12-cr-00074-AJN   Document 47   Filed 10/22/12   Page 13 of 18

Lisa P Chambers
244-15 131 Ave
Rosedale NY 11422
Cell (718) 440-2129
Retta2001@aol.com

October 1, 2012
Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 1007

Dear Honorable Alison J. Nathan:

My name is Lisa P Chambers; I am a single mother of one child who has worked two full time jobs for the past fourteen years. I work in the health care industry at two different nursing homes. I started as a certified nursing assistant at both facilities. I work nights 11pm-7am and then I start my day at the next job 8am -4 pm, within the last six years I have moved around in my day job in various positions, recreation, unit clerk on the rehab unit, currently I have been the staffing coordinator for the past year.
Frank Chambers is my uncle, I have five other uncles but he is the only one that has been around me from my childhood days. As a child he spent a lot of time with me, we would go to movies, out to eat, different family functions. As I got older he always had an open door for me, with no questions asked. When I had my son he was there for the both of us. He has watched my son while I work or attend school. We live with five minutes of each other and I go over his house almost every day. He cooks Sunday dinner every week and puts my share to the side for me. As I get older I appreciate every minute that I spend with my uncle, I appreciate the talks that we have about life things in the past and where we want to be in the future. I remember as a teenager he got me a summer job as a messenger down on Wall Street. He taught every part of the city which way to walk, who was who, at times we had lunch together. (Not to often because he was and is still not a man to eat out on the street) Everybody knew me as Frank's niece.
I understand that you have a job to do, but I am asking that as you deiced on my uncle's punishment to please remember his family and friends that care about him. Speaking for myself I need my uncle around me as long as there is life with us, and I am hoping that that will be for a very long time.

Sincerely,

Lisa P Chambers

**EXHIBIT D.**

Glenroy Walker
216-07 106 Ave
Hollis New York 11427

October 14, 2012
Honorable Alison J Nathan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 1007

Dear Honorable Alison J. Nathan:

My name is Glenroy Walker; I have known Frank Chambers for over twenty-two years. The first time that we met was through a mutual friend. The friend was driving an ice-cream truck and stopped by Frank's house we were introduced the next word that came out of his mouth was "are you hungry because there is food on the stove go help yourself"

In knowing Frank through-out the years he has been a great help to me at times he has watched my son as well as other neighborhood children. He has been a friend that encouraged me to set higher goals for myself. If Frank was aware of certain things that could improve one life's he would not hesitate to let you know.

As I conclude my letter on Frank Chambers, I would like it to be known he is a great guy, and a great friend. Please consider the type of person his family and friends view him as while you decided on his punishment.

Thank you for your time in reading my letter

*Glenroy Walker*
Glenroy Walker

# EXHIBIT E.

Case 1:12-cr-00074-AJN   Document 47   Filed 10/22/12   Page 17 of 18

Joyce Houslin
33 East 54th Street
Brooklyn New York 11203

October 6, 2012
Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Dear Honorable Alison J. Nathan:

My name is Joyce Houslin, I was employed at Citibank for approximately forty years. I am now retired but prior to my retirement I held a managerial position.

I have known Frank Chambers for approximately thirty-five years. I befriended Frankie shortly after he came to the United States. Throughout the years that I have known Frankie, he has always been respectful, kind and trustworthy. There have times that I told him he was too trusting and that he needs to be a little bit more aggressive. However, it's not easy to change good people; Frankie always approached people in a trustworthy manner.

I am asking that as you make your decision on the faith of Frank Chambers; please consider that in my eyes he has been a kind and trustworthy person. He is a friend, husband, father, grandfather, uncle; there are too many people who look up to him, and need him around in their daily lives.

Very truly yours,

*Joyce Houslin*
Joyce Houslin